**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSHUA CHARLES KUJAWA, individually and on behalf of all others similarly situated, | : | CASE NO. 25-cv-00768-GAM |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TATE & KIRLIN ASSOCIATES, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____ | / | |

**PLAINTIFF'S UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

0

## I.    INTRODUCTION

Plaintiff Joshua Charles Kujawa ("Plaintiff") and Defendant Tate & Kirlin Associates, Inc. ("Defendant") reached a class action settlement ("Settlement Agreement" or "Agreement")[1] that establishes a non-reversionary Settlement Fund in the amount of $1,000,000 for the benefit of the Settlement Class.

The settlement was reached by counsel with a keen understanding of the merits of the claims and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The relief provided meets the applicable fairness standards when taking into consideration the nature of Plaintiff's claims and the risks inherent in this class litigation. Accordingly, Plaintiff respectfully requests that the Court: 1. Preliminarily approve the Settlement Agreement; 2. Preliminarily certify the Settlement Class and appoint Plaintiff as Class Representative and Anthony Paronich as Class Counsel; 3. Approve the Settlement Administrator; 4. Approve the Notice Plan and Notices describing: (a) the Settlement and Settlement Class Members' rights; (b) the proposed release; (c) Plaintiff and Class Counsel's request for attorneys' fees and expenses and service payment; and (d) the procedures for opting-out of and for objecting to the Settlement Agreement; 5. Approve the claims process; and 6. Schedule a Final Approval Hearing to consider final approval of the Settlement.

## II.    BACKGROUND

Plaintiff Joseph Charles Kujawa filed this action asserting claims under the TCPA against Tate & Kirlin Associates, Inc. The lawsuit alleges that Defendant placed calls to cellular

---

[1] The Settlement Agreement is attached hereto as <u>Exhibit 1</u>. All capitalized terms used herein have the same definitions as those defined in the Agreement.

1

telephone numbers using an artificial or prerecorded voice without prior express consent, in connection with attempts to collect debts allegedly owed to Defendant's clients, including calls made to individuals who were not the intended debtors and did not owe the alleged debts.[2]

Plaintiff alleges that Defendant's conduct violated the TCPA, which provides statutory damages of $500 per violation, and up to $1,500 per violation for willful or knowing violations. Defendant disputes Plaintiff's allegations, denies any wrongdoing, denies any liability, and maintains that it did not violate the TCPA. After Plaintiff filed the Complaint, Defendant appeared and answered, and the parties proceeded into litigation under the supervision of this Court. The Court entered a scheduling order establishing a case schedule, including deadlines for fact discovery and class certification briefing. (Dkt. 16.)

The parties thereafter engaged in meaningful discovery and investigation of the claims and defenses. Plaintiff served written discovery requests and received Defendant's discovery responses. The Defendant produced voluminous data of the record of their pre-recorded calls. The Plaintiff then retained an expert, Aaron Woolfson, to analyze that data and prepare an expert report that identified the number of putative class members. Plaintiff also conducted a deposition of Defendant through its corporate representative. This discovery, along with counsel's investigation and assessment of the litigation risks, informed Plaintiff's evaluation of the strengths and potential weaknesses of the case, and the reasonableness of the proposed settlement. The parties ultimately participated in mediation on November 19, 2025. Following mediation, they reached a tentative agreement and signed a term sheet.

---

[2] The term "debt" is used here and throughout the brief as the commonly known term and not as strictly defined at 15 U.S.C. § 1692a(5).

2

After further arm's-length negotiations, the parties reduced their agreement to a written Class Action Settlement Agreement (the "Settlement" or "Agreement"), resolving all claims on a classwide basis subject to Court approval under Rule 23. Plaintiff now seeks preliminary approval of the Settlement, which provides substantial monetary relief to settlement class members while avoiding the expense, uncertainty, and delay associated with continued litigation, as discussed below.

## III.    SUMMARY OF THE SETTLEMENT TERMS

The following provides a summary of the material terms of the Settlement.

**Settlement Class:** The Settlement Class includes all persons throughout the United States (1) to whom Tate & Kirlin Associates, Inc. placed, or caused to be placed, a call to collect a debt, (2) directed to a number assigned to a cellular telephone, but not assigned to a Tate & Kirlin Associates, Inc. client, (3) in connection with which Tate & Kirlin Associates, Inc. used an artificial or prerecorded voice, (4) from February 13, 2021, through the date of preliminary approval, and (5) as preliminarily identified in the Expert Report of Aaron Woolfson. The Settlement Class is estimated to include approximately 19,562 unique telephone numbers.

**Settlement Consideration:** Defendant will cause to be created a non-reversionary common fund in the amount of $1,000,000. The Settlement Fund will be used to pay Settlement Class Members with Approved Claims, Settlement Administration Expenses, attorneys' fees and costs approved by the Court, and a service award to Plaintiff if approved by the Court. The Settlement does not provide for any reversion of funds to Defendant.

**Settlement Administration:** Pending the Court's approval, Angeion Group will serve as

3

the Settlement Administrator. The Settlement Administrator will be responsible for implementing the notice program, establishing and maintaining the Settlement Website and toll-free number, processing Claim Forms, handling requests for exclusion, processing objections, and distributing settlement payments to Settlement Class Members who submit valid and timely Claim Forms.

**Notice Plan:** The Settlement Administrator will provide notice to Settlement Class Members using direct mailed postcard notice with a detachable Claim Form and will maintain a Settlement Website that includes key settlement documents, important dates, and the online Claim Form. Before mailing, the Settlement Administrator will perform address updates through NCOA and other reasonable skip-tracing measures as needed to increase deliverability. The notice will inform Settlement Class Members of the material terms of the Settlement, their rights to submit a claim, opt out, or object, the deadlines for doing so, and the date and location of the final approval hearing, as well as how to obtain additional information.

**Claims Process and Payment:** Settlement Class Members who wish to receive a settlement payment must submit a timely and valid Claim Form. Class Members may submit claims either online within seventy-five days after preliminary approval or by mail postmarked within sixty days after preliminary approval. Each Settlement Class Member who submits a valid and timely Claim Form will receive a pro rata share of the net Settlement Fund after deduction of any Court-approved attorneys' fees, costs, service award, and settlement administration expenses. Based on the anticipated participation rate, Settlement Class Members are expected to receive approximately *$250 to $350* per approved claim, although the actual payment amount will depend on the number of approved claims.

4

**Attorneys' Fees, Costs, and Service Award:** Class Counsel will seek Court approval of attorneys' fees not to exceed one-third of the Settlement Fund and reimbursement of litigation costs not to exceed $25,000. Plaintiff will also seek a Court-approved service award in recognition of his efforts on behalf of the Settlement Class.

**Exclusion and Objection Procedures:** Settlement Class Members may request exclusion by submitting a written request postmarked within sixty days after preliminary approval, including identifying information and the telephone number at which the calls were received. Settlement Class Members may object to the Settlement by submitting a written objection postmarked within seventy-five days after preliminary approval.

**Release:** Settlement Class Members who do not timely exclude themselves will release Defendant and the Released Parties from all claims arising under the TCPA, FDCPA, and related state law statutes, and certain related claims, arising out of calls using an artificial or prerecorded voice directed to cellular telephone numbers through the Preliminary Approval Date, as set forth in the Settlement Agreement. The Release is limited to claims based on the conduct alleged in the Action and does not release unrelated claims.

**Cy Pres Distribution:** If any settlement checks remain uncashed or otherwise cannot be distributed, any remaining funds will be distributed to the National Legal Aid and Defender Association as a cy pres award, subject to Court approval. No amount will revert to the Defendant.

## IV.    ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlement of class actions and other complex matters for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *E.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any benefit the class could hope to obtain. *See*, *e.g.*, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process.  The first step is to determine that the proposed settlement class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the plaintiff must demonstrate that the proposed class and proposed class representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1–4).

The second step is to determine that the settlement is entitled to preliminary approval. The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *Manual for Compl. Lit.* § 1.46 at 62, 64-65 (1982)).

### A.  The Settlement Class Should Be Preliminarily Certified

The Settlement Class satisfies the requirements of Rules 23(a) and (b)(3).

The numerosity requirement is met where the class is so numerous that joinder of all members is impracticable. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Numerosity is satisfied here as Defendant's records indicate that 19,562 unique telephone numbers are in the Settlement Class.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact that are common to the Settlement Class that would generate common answers. These questions are directly guided by Plaintiff's claims and Defendant's defenses, and are subject to class wide resolution based on common evidence, including whether Defendants made the calls with a pre-recorded message; whether Defendants maintained adequate TCPA compliance policies and procedures; whether Defendant utilized tools to identify numbers that had been reassigned; and whether Defendant called Plaintiff and other consumers on their cellular telephone number.

Rule 23(a)(3) requires that the claims of the class representative are "typical of the claims … of the class." "The typicality requirement 'is designed to align the interests of the class and the

class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citation omitted). As the Third Circuit has held, "'[t]he concepts of commonality and typicality are broadly defined and tend to merge.'" *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). Here, typicality is met because Plaintiff's claims and the class's claims arise from Defendant's single course of conduct, a pre-recorded calling campaign to try to collect a debt, and are based on the same legal theories. Plaintiff has the same TCPA claims as all other Settlement Class Members who were called by Defendant. *See Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("The proposed [TCPA] class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call … from [defendant]"); *Grannan v. Alliant Law Grp., P.C.*, 2012 U.S. Dist. LEXIS 8101, at *11 (N.D. Cal. Jan. 24, 2012) ("The claims of the Named Plaintiff are typical of the Settlement Class, and arise out of [defendant's] TCPA violations").

Rule 23(a)(4)'s adequacy requirement "considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005). Plaintiff has no antagonistic or conflicting interest with the members of the proposed class. To the contrary, he demonstrated his commitment to the class by actively participating in the litigation, including by helping to investigate the potential claims, staying informed regarding the case, and participating in settlement.

Further, Plaintiff and the Settlement Class are represented by qualified and competent

Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA cases in particular. *See* Declaration of Anthony Paronich attached as Exhibit 2; *see Ikuseghan v. Multicare Health Sys.*, 2015 U.S. Dist. LEXIS 99175, at *15 (W.D. Wash. July 29, 2015) (adequacy satisfied where plaintiff's counsel was counsel "in other class action lawsuits, including a previous TCPA case"). Class Counsel have vigorously litigated this action and will continue to do so.

The Settlement Class also satisfies Rule 23(b)(3), which requires that the court find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry "measures whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir. 2001) (citing *Amchem*, 521 U.S. at 623). The Settlement Class readily satisfies the predominance requirement because the common questions for all Settlement Class Members (including whether the calls were made with a pre-recorded message, whether Defendant maintained adequate policies and procedures to comply with the TCPA, whether Defendant made the calls with consent, focus on Defendant's conduct and can be resolved based on common evidence, including Defendant's records and Defendant's employees' testimony.

The other requirement of Rule 23(b)(3) is superiority, *i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue. Superiority "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative

available methods of adjudication." *In re Warfarin*, 391 F.3d at 533-34. Here, the Settlement provides redress for Settlement Class Members who individually may have potential damages of several thousand dollars at most and who thus are economically foreclosed from otherwise pursuing relief. To the extent Settlement Class Members did pursue litigation outside of the class context, the Settlement would avoid potential individual cases that could be filed by the thousands of Settlement Class Members for the same claims asserted here. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. *See, e.g., Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275, at \*14-15 (N.D. Ohio Dec. 1, 2014) ("the class action [is] a superior device").

For these reasons, the Court should certify the Settlement Class.

**B.  Preliminary Approval of the Proposed Settlement Is Warranted**

Plaintiff now seeks preliminary approval of the Settlement pursuant to Rule 23(e). Granting preliminary approval "establishes an initial presumption of fairness when the court finds that (1) the negotiations occurred at arms'-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a fraction of the class objected." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. … They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79,

10

88 n.14 (1981).

Here, the Settlement is well within "the range of possible approval" and should be preliminarily approved. The Settlement was negotiated with the assistance of renowned mediator Aaron Weiss during a full day mediation. Plaintiff had the benefit of significant discovery prior to finalizing the settlement, including Defendant's written discovery responses, and Defendant's productions. Class Counsel's understanding of the key issues driving the litigation, including the likelihood of class certification, the strength of Defendant's defenses, and the ever-shifting TCPA law landscape, prepared them for well-informed settlement negotiations.

The Settlement is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. Class Counsel have extensive experience and expertise in the litigation, certification, and settlement of nationwide TCPA class action cases.  Class Counsel zealously represented Plaintiff and the Settlement Class Members' interests throughout the litigation and will continue to do so. *Id*. at ¶ 23.  The Settlement is therefore the result of serious, arm's-length, and informed negotiations justifying preliminary approval.

The Settlement is reasonable and fair because it provides an excellent monetary result for Settlement Class Members and meaningful remedial relief in return for a narrow release tailored to the conduct and claims presented in the action. Payments from the Settlement Fund that are not successfully delivered to claiming Settlement Class Members will be divided among other Settlement Class Members who do claim their initial distributions, if administratively feasible. While payments for attorneys' fees and expenses and a service payment are to be paid from the

11

Settlement Fund, the Settlement is not conditioned on any such award.

Moreover, the Settlement provides no preferential treatment to any individual member of the Settlement Class. Under the Settlement, everyone is treated exactly the same: each class member seeking to recover a portion of the Settlement Fund must submit the same Claim Form, and each class member submitting a Valid Claim will receive the same *pro rata* distribution from the Settlement Fund.

Although, as relevant here, the TCPA provides for statutory damages of up to $500 per violation, *see* 47 U.S.C. § 227(c)(5), it is well-settled that a proposed settlement may be acceptable even though it amounts to only a percentage of the potential recovery that might be available to the class members at trial. *See, e.g., Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement …; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Here, the substantial monetary relief on a per Settlement Class Member basis and the remedial relief agreed to by Defendants place the Settlement well within the range of possible approval. Defendant will pay $1,000,000 and will change their business practices to avoid further potentially violative calls. Plaintiff's counsel anticipates that each claimant will receive $250-

$350. This amount is significant and exceeds the range of similar settlements. *Id.*; *see, e.g., In re Capital One TCPA  Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval with a $39.66 payout per claim); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) ($20-$40 per claimant); *Kolinek v.  Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Steinfeld v. Discover Fin. Servs.*, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10,  2014) ($46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga.  Jan. 30, 2017) ($24); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, ECF 86 (S.D. Fla. Jan. 16, 2020) ($10 voucher and $5 in cash); *Cabiness v. Educ. Fin. Sols., LLC*, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) ($33.36).

Ultimately, any settlement requires the parties to balance the merits of the claims and defenses asserted against the risks of continued litigation and attendant delay. By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendants. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, Defendant's financial condition, and the continued risk of a change in TCPA law that could defeat Plaintiff's and the class's claims in part or in whole, the availability of prompt relief under the Settlement is highly beneficial.

**C.  The Form and Method of Notice Should Be Approved**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for*

*Compl. Litig.*, § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Manual for Compl. Litig.*, § 21.312.

The Notice Program satisfies this standard. It will inform Settlement Class Members of the substantive terms of the Settlement. It will advise Settlement Class Members of their options for remaining part of the Settlement, for objecting to the Settlement or Class Counsel's attorneys' fee application and/or Plaintiff's service award, for opting-out of the Settlement, for submitting a claim, and for obtaining additional information about the Settlement. Through the provision of (1) the Summary Notice by both email and mail, (2) publication notice, and (3) the Notice, which can be accessed on the Settlement Website, the Notice Plan is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## V.  CONCLUSION

For the reasons above, the Settlement warrants this Court's preliminary approval, and Plaintiff's Counsel respectfully requests that the motion be granted. A proposed schedule is included in the proposed order attached as Exhibit 3.

DATED this 19th day of January, 2026.          Respectfully submitted,

/s/ Anthony I. Paronich
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400

14

Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.