IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA CHARLES KUJAWA, individually and on behalf of all others similarly situated, | : : : | CASE NO. 25-cv-00768-GAM |
| Plaintiff, | : : | |
| v. | : : | |
| TATE & KIRLIN ASSOCIATES, INC. | : : | |
| Defendant. | : : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION
FOR AWARD OF ATTORNEYS' FEES, EXPENSES,
AND CLASS REPRESENTATIVE SERVICE PAYMENT**

I.     **INTRODUCTION**

Plaintiff Joshua Charles Kujawa ("Plaintiff") and Defendant Tate & Kirlin Associates, Inc. reached a class action settlement ("Settlement Agreement" or "Agreement")[1] that establishes a non-reversionary Settlement Fund in the amount of $1,000,000 for the benefit of the Settlement Class. Defendant has also agreed to take remedial measures aimed at curbing future potentially violative calls.

The settlement was reached by counsel with a keen understanding of the merits of the claims and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The relief provided meets the applicable fairness standards when taking into consideration the nature of Plaintiff's claims and the risks inherent in this class litigation.

Plaintiff and Class Counsel submit this memorandum to address their request for a class representative service award, as well as an award of attorneys' fees and expenses.

As the Court is aware, the background of this action is detailed in Plaintiff's brief in support of preliminary approval (ECF 19) and is herein incorporated by reference.

For the reasons set forth below, Plaintiff respectfully submits that the requested class representative Service Payment of $5,000, an attorneys' fee award of $333,333.33, equal to one-third of the Settlement Fund and an award of $22,150.00 in expenses are well justified in light of the excellent result achieved for the Settlement Class under applicable Supreme Court and Third Circuit precedents.

Indeed, numerous other federal courts in Pennsylvania have awarded the same in TCPA

---

[1] All capitalized terms used herein have the same definitions as those defined in the Agreement.

1

class actions. *See e.g. Miller v. Bath Fitter Tennessee, Inc. et al*, Civil Action No. 1:21-cv-01072-JPW (M.D. Pa. March 6, 2023) (Judge Wilson awarding one-third of fees and additional litigation expenses of $1,950,000 common fund in TCPA class action); *Perrong v. Frontier Utilities Northeast LLC*, Civil Action No. 20-cv-5844 (E.D. Pa. January 19, 2023) (Judge Goldberg awarding one-third of fees and additional litigation expenses of $3,050,000 common fund in TCPA class action); *Abramson v. Agentra, LLC*, 2021 U.S. Dist. LEXIS 144659 (W.D. Pa., August 3, 2021) (Judge Dodge awarding one-third of fees and additional litigation expenses of common fund in TCPA class action).

## II. ARGUMENT

### a. Class Counsel Are Entitled to a Fee Award from the Fund

Rule 23 permits a court to award "reasonable attorney's fees… that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine is 'based on the equitable notion that those who have benefited from litigation should share its costs,' and that unless the costs of litigation are spread to beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 603 (M.D. Pa. 1996) (quoting *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 250 (1985)).

2

An attorney who creates a "common fund" or "substantial benefit" allocable with some exactitude to a definite group of persons acquires an equitable claim against that group for the costs incurred in creating the fund or benefit. *Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161 (1939); *Trustees v. Greenough*, 105 U.S. 527 (1882). Historically, the rationale entitling counsel to a percentage of the common fund derives from the equitable powers of the courts under the doctrines of quantum meruit, *Cent. R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 124 (1885); unjust enrichment, *see, e.g., Greenough*, 105 U.S. at 532-33; and later, what has become known as the "substantial" or "common benefit" doctrine. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-94 (1970). All of these doctrines now fall under the larger umbrella of the "common fund" doctrine. Under the common fund doctrine, fee reimbursement is permitted in the following circumstances: (1) when litigation indirectly confers substantial monetary or non-monetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named party who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members. H. NEWBERG, ATTORNEY FEE AWARDS § 2.01 at 28-29 (1986).

Such cases as this one, therefore, are called "common benefit" or "common fund" cases, and "[i]t is well-settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable from that fund." *Boeing,* 444 U.S. at 478-79; *Mills*, 396 U.S. at 391-92. And, as the Supreme Court has explained, in contrast to statutory fee shifting where fees are calculated "under the common fund doctrine … a reasonable fee is based on *a percentage of the fund bestowed upon the class*." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (emphasis added).

3

"The percentage-of-recovery method is generally favored in cases involving a common fund," such as here. *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x. 191, 196-97 (3d Cir. 2014) (quoting *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 732 (3d Cir. 2001)). That method "allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (citation omitted). The percentage-of-the-fund method thus "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted).

b.  **The Requested Fee Is Fair and Reasonable**

The Settlement establishes a non-reversionary common fund of $1,000,000, from which Settlement Class Members will receive payments and Class Counsel will receive any fee and expense reimbursement. *See* Exhibit 1, Declaration of Anthony Paronich ("Paronich Decl.") at ¶12. The Settlement also provides for business changes that will result in the cessation of calls to the Settlement Class. *Id.* at ¶15.

The Third Circuit has identified ten factors that courts should consider in reviewing a request for attorneys' fees in such a common-fund case. These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies

    conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). The *Gunter/Prudential* factors should not "be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929, at *12 (E.D. Pa. Jan. 24, 2011). As demonstrated below, the above factors strongly support the requested fee, which is equal to one third of the Settlement Fund, as appropriate, fair, and reasonable.

        **1.**    **The Size of the Fund Created and Number Benefitted**

The proposed Settlement Class includes 19,562 unique telephone numbers. Subject to final approval by the Court, Settlement Class Members who submit claims will receive an equal share of the net Settlement Fund (after deducting fees, expenses, and Service Payment approved by the Court). Paronich Decl. at ¶13. Plaintiff's counsel anticipates that each claimant will receive *$250 to $350. Id.* A $1,000,000 common fund reduced by $333,333.33 in fees, $22,150 in litigation expenses, $5,000 in a service award as well as an estimated $55,275 in administrator costs leaves $584,241.67. If 10% of individuals file a claim, which is high for any consumer class action, including a TCPA case, that leaves just under $300 per claimant.

5

This amount is significant and exceeds the range in similar settlements[2], heavily weighing in favor of the fee requested. In addition to the $1,000,000 immediate cash benefit to the Class, the Settlement provides meaningful remedial relief in that the Defendant has taken steps to avoid this conduct repeating itself. Thus, the size of the Settlement Amount obtained by Plaintiff's Counsel and the number of persons who will be benefitted by the Settlement weigh heavily in favor of the requested fee.

### 2.     The Presence or Absence of Substantial Objections

The Notice disseminated to the Settlement Class disclosed that Plaintiff would seek an attorneys' fee award of $333,333.33, plus documented and reasonable expenses and out-of-pocket costs of up to $25,000.  No objections have been filed as of the date of this filing.

### 3.     The Skill and Efficiency of the Attorneys Involved

The quality of the representation is also relevant in determining fee awards.  "The Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'" *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d at 198).  "In evaluating the skill and efficiency of the attorneys involved, courts have looked to 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Alexander v.*

---

[2] *See, e.g.*, *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($39.66).

6

*Wash. Mut., Inc.*, No. 07-cv-4426, 2012 U.S. Dist. LEXIS 171611, at *6 (E.D. Pa. Dec. 4, 2012) (quoting *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)).

Here, the quality of Class Counsel's representation of Plaintiff and the Class, as well as their skill and experience in the specialized field of consumer class action litigation and TCPA litigation in particular, support the requested fee. *See* Paronich Decl. ¶10. As discussed above and below, Class Counsel obtained a substantial non-reversionary cash recovery for the Class as well as meaningful remedial relief, where the risks and uncertainties of continued litigation could result in no recovery for the Class whatsoever, even after years of costly litigation. This factor supports approval of the requested fee.

### 4. The Complexity and Duration of the Litigation

Courts have long recognized that "particularly in class action suits, there is an overriding public interest in favor of settlement,' ... because ... 'class action suits have a well deserved reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Here, this case has been pending for over a year, and despite involving complex and evolving statutory interpretation and other issues, Class Counsel was able to work expeditiously to develop the case and bring the matter to a resolution in an efficient and effective manner. *See* Paronich Decl. ¶¶ 16–20.

"'One purpose of the percentage method' of awarding fees — rather than the lodestar method, which arguably encourages lawyers to run up their billable hours — 'is to encourage early settlements by not penalizing efficient counsel ....'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d at 198 (quoting MANUAL FOR COMPLEX LITIG. (THIRD) § 24.121).

7

Moreover, the Third Circuit has instructed that "[w]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) ("[R]equiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip — the costs of formal discovery itself — off the table during negotiations. This could deter the early settlement of disputes.").

Further, prolonging this litigation and "running up" hours under a lodestar approach would not have occurred in a vacuum. Defendant lacked meaningful non-insurance assets to contribute to any judgment or settlement, as confirmed during deposition testimony. Continued litigation would have steadily eroded assets available, thereby diminishing — rather than enhancing — the funds potentially available to the Class. In a worst-case scenario, exhaustion of assets and insurance defending the case have forced Defendant into bankruptcy, leaving the Class to pursue recovery in a far more uncertain and protracted forum with little or no meaningful assets available. By resolving this matter efficiently, Class Counsel obtained all of the available insurance resources and maximized the recovery actually obtainable for the Class.

And "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Here, the Parties reached the Settlement through formal mediation with an independent renowned mediator Aaron Weiss during a full day mediation, resulting in a mediator's proposal as

to the monetary amount of the settlement, which the parties later accepted. *See Moyle v. Liberty Mut. Ret. Ben. Plan*, 2018 U.S. Dist. LEXIS 34730, at *20-21 (S.D. Cal. Mar. 2, 2018) (approving settlement and awarding fees in class action in which the parties mediated with Mr. Hughes, who "has served as a neutral in scores of national class, collective, and mass actions," and "accepted his proposal"). Prior to agreeing to the Settlement, Class Counsel were well informed to consider the relative strengths and weaknesses of the Parties' claims and contentions and the benefits the Settlement offers to the Class as they had done discovery to learn the Defendant's policies and procedures for calling and had retained an expert who identified the class members that are the subject of the release. In view of the risks, uncertainties, and costs of continued litigation, Plaintiff and Class Counsel made the reasoned decision that the terms of the Settlement are fair, reasonable, and adequate and that the Settlement is in the best interest of the Class. *See* Paronich Decl. ¶¶16-18.

As many courts have endorsed, "[i]nstead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery ... [such that] it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, M 21-95, 2006 U.S. Dist. LEXIS 81440, at *16 (S.D.N.Y. Nov. 8, 2006) (citation omitted). Absent the settlement, it is "entirely possible that the class would have recovered nothing at all, or a range of recovery not far from what this bird-in-the-hand supplies." *In re ATI Techs., Inc. Secs. Litig.*, No. 01-cv-2541, 2003 U.S. Dist. LEXIS 7062, at *7 (E.D. Pa. Apr. 28, 2003). This factor also weighs in favor of approving the requested fee.

     **5.**     **The Risk of Nonpayment**

9

"Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." *Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242, at *41 (D.N.J. May 21, 2015). As many courts have recognized, "[s]uccess is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable." *Martin v. Foster Wheeler Energy Corp.*, No. 06-cv-0878, 2008 U.S. Dist. LEXIS 25712, at *12 (E.D. Pa. Mar. 31, 2008). "[C]ourts have recognized that the risk of non-payment is heightened in a case of this nature where counsel accepts a case on a contingent basis." *Reinhart v. Lucent Techs., Inc.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004).

Here, Plaintiffs' Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement."). Counsel faced the "risks of establishing liability," as well as certifying and maintaining a certified class through judgment and any appeal. *In re Rite Aid*, 396 F.3d 294, 304 (3d Cir. 2005).

Here, Plaintiff faced a number of significant hurdles as Tate & Kirlin vehemently disputes that it violated the TCPA and raised a host of defenses, both on the merits and to class certification:

- Tate & Kirlin likely intended to move for summary judgment, asserting, among other things, that it could reasonably rely on consent to call provided by its customers and that class members must individually demonstrate receipt of prerecorded voice messages. If this Court accepted Tate & Kirlin's position, Plaintiff's claims—and those of Settlement Class Members—would fail;
- Tate & Kirlin further contended that non-customers could and do consent to receiving prerecorded calls and that for those persons, issues of prior express consent would defeat their claims;
- Tate & Kirlin asserted constitutional defenses aimed at limiting or eliminating statutory damages;

10

- Tate & Kirlin maintained that, for a variety for reasons, a class could not be certified for litigation purposes or that if a class was certified, certification could not be maintained through trial. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (Lanza, J.) (denying motion to certify TCPA class); *Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same); and

- Even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

So given the work left to perform, significant litigation-related risks existed. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

No matter, in the face of real litigation-related risks, Class Counsel helped secure the noteworthy settlement at bar. This supports the requested attorneys' fee award. *See Gutierrez-Rodriguez v. RM Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) ("The Court finds further support for an upward departure in the substantial risks of continued litigation, as well as the high quality of representation by class counsel, who brought this case on a contingency basis and received no compensation for their efforts [to date]."); *Spears v. First Am. Eappraiseit*, No. 08-CV-00868-RMW, 2015 WL 1906126, at *2 (N.D. Cal. Apr. 27, 2015) (awarding 35% of the $7,557,096.92 net settlement fund in a case where class counsel "faced at least three significant novel issues of law").

    **6.**  **The Amount of Time Devoted by Class Counsel**

11

The efforts put forth by Class Counsel over the course of the contentious litigation brought this matter to a resolution. Class Counsel spent significant resources pursuing this litigation. *See* Paronich Decl. at ¶ 20.

Because Class Counsel seeks a fee based on the creation of a "common fund" as opposed to seeking statutorily award attorneys' fees, the Court need not undertake a lodestar calculation and analysis. *See, e.g., Moore v. GMAC Mortg.,* No. 07-4296, 2014 U.S. Dist. LEXIS 181432 (E.D. Pa. Sept. 18, 2014) (holding that a lodestar calculation is not mandatory and should not displace a district court's primary reliance on the percentage-of-recovery method); *Rossini v. PNC Fin. Servs. Grp. Inc.*, No. 2:18-cv-1370, 2020 U.S. Dist. LEXIS 113242, at *59-60 (W.D. Pa. June 26, 2020) (finding that a lodestar calculation was "not required, and not particularly useful" in FCRA case creating a common fund for class members).[3]

Indeed, the Third Circuit has recognized that a more important consideration than the amount of time spent by counsel in achieving a settlement may be how that time is utilized and has recommended that counsel that brings about a quick and efficient resolution for a class should be entitled to a premium incentive above the typical percentages. *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. at 255. And while Class Counsel believes the speed at which this Settlement was achieved would merit such a "premium incentive," it seeks less than the standard percentage that has typically been awarded in common fund cases of this type when taking into account the economic value of the Settlement's remedial relief. This factor weighs in favor of the requested fee.

---

[3] Fee awards are of course entirely up to the discretion of this Court. If the Court would like to engage in a lodestar review, Class Counsel will readily supplement this submission with any additional materials the Court may deem necessary.

### 7. Awards in Similar Cases

The Third Circuit has affirmed attorneys' fees constituting one-third of a settlement fund in a TCPA case that had been contested by an objector, and where the fund included a reverter provision (not present here). *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016). Class Counsel's request for an award of attorneys' fees of one third of the common fund is also well within the range of fee awards in cases across the country. Kaufman Decl. ¶ 26; *see, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 822 (3rd Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund" (citation omitted)). Thus, this factor weighs in favor of approval.

### 8. Value of Benefits Attributable to Efforts of Class Counsel

Here, "[t]he entirety of the value achieved for the Class was attributable to Class counsel; no other groups, such as government agencies conducting investigations, were involved in this case." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010) (approving 33.1% fee in consumer class action). This factor supports the fee requested.

### 9. Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement

"[T]he goal of the fee setting process is to 'determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order.'" *In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *47 (E.D. Pa. June 2, 2004). "[I]n private contingency fee cases, … plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *Bradburn Parent Teacher Store, Inc. v. 3M*,

13

513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (internal citation omitted). The amount sought here is effectively less than such contingency fees. This factor too favors the fee requested.

### 10. Any Innovative Terms of Settlement

In addition to the monetary benefit to the Settlement Class members, the Settlement provides meaningful remedial relief as Defendant will change their business practices to avoid further potentially violative calls. Again, the requested attorneys' fee is fair and should be granted.

### C. Class Counsel's Expenses are Reasonable

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995). Indeed, "'[t]he common-fund doctrine ... allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred.'" *In re Linerboard*, 2004 U.S. Dist. LEXIS 10532, at *12 n.6 (quoting *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. at 241)*; see Tavares v. S-L Distribution Co.*, No. 1:13-CV-1313, 2016 WL 1743268, at *15 (M.D. Pa. May 2, 2016).

Collectively, Class Counsel expended a total of $22,150.00 on this case to date, including for filing, service of process, travel, deposition, expert, and mediation expenses. *See* Paronich Decl. at ¶21. All of the expenses were necessary and appropriate for the prosecution of this Action, and all are of the type that are customarily incurred in litigation and routinely charged to clients billed by the hour. *Id*.

14

### D.  The Requested Service Payment Should Be Approved

"Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 334 n.65 (3d Cir. 2011) (citation omitted). "'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation,' and to 'reward the public service of contributing to the enforcement of mandatory laws.'" *Id.* (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 U.S. Dist. LEXIS 38663, at *63-64 (D.N.J. Apr. 8, 2011)).

Here, Plaintiff took steps to protect the interests of the Class and spent time pursuing the claims underlying this matter. To start, Plaintiff's initial decision to pursue this case as a class action, and not simply seek individual damages, directly benefited the Class. As there are no other class representatives in this matter, without Mr. Kujawa, the common fund and remedial relief obtained here might never have come to be. Accordingly, Class Counsel requests that the Court approve the requested Service Payment of $5,000 for Plaintiff.

Class Counsel's request for a Service Payment to Plaintiff of $5,000 is in line with incentive awards courts have approved in comparable TCPA matters, and is in fact on the lower end. *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving $25,000 service award).

The Service Payment requested is "fair and reasonable" and should be approved. *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 U.S. Dist. LEXIS

64987, at *21-23 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016); *accord Meijer, Inc. v. 3M*, No. 04-5871, 2006 U.S. Dist. LEXIS 56744, at *83 (Aug. 15, 2006).

## IV.  CONCLUSION

Based on the foregoing, the Court is respectfully requested to approve the requested attorneys' fees and expenses and the Service Payment to Plaintiff.

DATED this 1st day of March, 2026.    Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Anthony I. Paronich*
Anthony I. Paronich