IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA CHARLES KUJAWA, individually and on behalf of all others similarly situated, | : : : | CASE NO. 25-cv-00768-GAM |
| Plaintiff, | : : | |
| v. | : : | |
| TATE & KIRLIN ASSOCIATES, INC. | : : | |
| Defendant. | : : | |

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT**

**I.       INTRODUCTION**

Plaintiff Joshua Charles Kujawa ("Plaintiff") and Defendant Tate & Kirlin Associates, Inc. ("Defendant") (the Plaintiff and Defendant collectively referred to herein as the "Parties") have negotiated, and the Court preliminarily approved a class action settlement of this Telephone Consumer Protection Act ("TCPA") case on January 27, 2026. (ECF No. 22.)  A copy of the Settlement is on file with the Court.  (ECF No. 19-1.)  The Settlement requires the establishment of a $1,000,000 fund for the benefit of the Settlement Class, which is to be distributed *pro rata* to Settlement Class Members who are Authorized Claimants after payment of notice and Administration Costs (if approved), a Fees, Costs, and Expenses Award to Class Counsel (if approved), and Service Payment to the Plaintiff (if approved).[1] Defendant has also agreed to take remedial measures aimed at curbing future potentially violative calls.

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), filed at ECF No. 19-1.

- 1 -

There is no reversion in the Settlement Fund.  Settlement Class Members who submitted authorized claims to the Claims Administrator ("Authorized Claimants") will each receive a sizeable cash payment from this fund of $749.02 (*See* Declaration of Will Christen ¶ 14) ("Angeion Decl."), attached hereto as Exhibit 1.)  This per claim payment amount far exceeds other TCPA class action settlements approved by courts in this Circuit and elsewhere.

The Parties' Settlement Agreement is now subject to final approval by the Court.  In accordance with the Court's Preliminary Approval Order, CAFA Notice Packets were mailed via Priority Mail to the U.S. Attorney General and the Attorneys General of each of the 50 states, the District of Columbia, and U.S. Territories, a Postcard Notice was sent via first class mail to identified Settlement Class Members.  (*See* Angeion Decl. ¶¶ 5-8.)  Notably, there were *no exclusion requests or objections* to the settlement.  (*Id.* ¶ 15).

Pursuant to the Class Action Fairness Act, notice was provided to the appropriate federal and state officials in accordance with 28 U.S.C. § 1715 and this Court's Preliminary Approval Order. See ECF No. 22 at 2. More than ninety days have elapsed since service of the CAFA notices, and no federal or state governmental entity has objected to or otherwise commented upon the Settlement. (Angeion Decl. ¶ 8.)

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in this Action on behalf of all members of the Settlement Class.  As demonstrated below, the Settlement negotiated by the Parties is fair, adequate, and reasonable and provides a substantial benefit to the Settlement Class.

The Parties request that the proposed order attached hereto as Exhibit 2, and filed with the Court previously, be entered.  The order will fully dispose of this matter.

## II.   NATURE AND BACKGROUND OF THE CASE

Plaintiff Joshua Charles Kujawa filed this action asserting claims under the TCPA against Tate & Kirlin Associates, Inc. The lawsuit alleges that Defendant placed calls to cellular telephone numbers using an artificial or prerecorded voice without prior express consent, in connection with attempts to collect debts allegedly owed to Defendant's clients, including calls made to individuals who were not the intended debtors and did not owe the alleged debts.[2]

Plaintiff alleges that Defendant's conduct violated the TCPA, which provides statutory damages of $500 per violation, and up to $1,500 per violation for willful or knowing violations. Defendant disputes Plaintiff's allegations, denies any wrongdoing, denies any liability, and maintains that it did not violate the TCPA.  After Plaintiff filed the Complaint, Defendant appeared and answered, and the parties proceeded into litigation under the supervision of this Court.  The Court entered a scheduling order establishing a case schedule, including deadlines for fact discovery and class certification briefing. (ECF No. 16.)

The parties thereafter engaged in meaningful discovery and investigation of the claims and defenses. Plaintiff served written discovery requests and received Defendant's discovery responses. The Defendant produced voluminous data of the record of their pre-recorded calls. The Plaintiff then retained an expert, Aaron Woolfson, to analyze that data and prepare an expert report that identified the number of putative class members. Plaintiff also conducted a deposition of Defendant through its corporate representative. This discovery, along with counsel's investigation and assessment of the litigation risks, informed Plaintiff's evaluation of the

---

[2] The term "debt" is used here and throughout the brief as the commonly known term and not as strictly defined at 15 U.S.C. § 1692a(5).

strengths and potential weaknesses of the case, and the reasonableness of the proposed settlement. The parties ultimately participated in mediation on November 19, 2025. Following mediation, they reached a tentative agreement and signed a term sheet.

After further arm's-length negotiations, the parties reduced their agreement to a written Class Action Settlement Agreement (the "Settlement" or "Agreement"), resolving all claims on a classwide basis subject to Court approval under Rule 23.  Plaintiff now seeks final approval of the Settlement, which provides substantial monetary relief to settlement class members while avoiding the expense, uncertainty, and delay associated with continued litigation, as discussed below.

### III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following Settlement Class for settlement purposes only:

> The Settlement Class includes all persons throughout the United States (1) to whom Tate & Kirlin Associates, Inc. placed, or caused to be placed, a call to collect a debt, (2) directed to a number assigned to a cellular telephone, but not assigned to a Tate & Kirlin Associates, Inc. client, (3) in connection with which Tate & Kirlin Associates, Inc. used an artificial or prerecorded voice, (4) from February 13, 2021, through the date of preliminary approval, and (5) as preliminarily identified in the Expert Report of Aaron Woolfson. The Settlement Class is estimated to include approximately 19,562 unique telephone numbers.

 (Agreement ¶ 2.16).

### B.    SETTLEMENT RELIEF

### 1.    Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $1,000,000.00 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) attorney's fees of one-third of the total amount of

the Settlement Fund ($333,333.33) in addition to out of pocket expenses ($22,150.00), subject to Court approval; and (4) a court-approved Service Award to the Class Representative of $5,000. Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all settlement administrative expenses, Service Awards, and fee awards are paid out of the Settlement Fund. If all the attorneys' fees, expenses, Service Award and settlement administration expenses are approved as requested, the Settlement Administrator has projected that each claimant will receive a sizeable cash payment from this fund of **$749.02.** (*See* Angeion Decl. ¶13).

      **2.**      **Class Representative Service Payment**

If approved by the Court, Plaintiff will receive a one-time Service Payment of $5,000 from the Settlement Fund. As discussed in Plaintiff's Motion for Award of Attorneys' Fees, Costs, Expenses, and Class Representative Award, contemporaneously filed herewith, this award will compensate the Plaintiff for their time and effort and for the risk undertook in prosecuting this case as well as participating in discovery.

      **3.**      **Attorneys' Fees and Costs**

Settlement Class Counsel has filed a motion for an award of attorneys' fees in the amount of one-third of the total amount of the Settlement Fund ($333,333.33) and out of pocket costs and expenses of $22,150.00. The requested award of attorneys' fees, costs, and expenses will compensate Settlement Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the settlement, securing Court approval of the settlement, making sure the settlement is fairly implemented, and obtaining dismissal of the Action.

### 4. Remaining Funds

If any settlement checks remain uncashed or otherwise cannot be distributed, any remaining funds will be distributed to the National Legal Aid and Defender Association as a cy pres award, subject to Court approval. No amount will revert to the Defendant. (Agreement. ¶11.8). However, it is important to note that the only *cy pres* payment will be made for uncashed checks which are no longer economically viable to distribute to Authorized Claimants.

### C. NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Administrator, Angeion Group ("Angeion") was engaged to perform the following services: (a) preparing and sending notices in connection with the Class Action Fairness Act; (b) receiving and analyzing the Class List from Counsel; (c) creating a Settlement Website with online Claim filing capabilities; (d) establishing a toll-free telephone number; (e) establishing a post office box for the receipt of mail; (f) preparing and sending the Postcard Notice via first-class mail; (g) establishing an email address to receive Settlement Class Member inquiries; (h) receiving and processing mail from the United States Postal Service ("USPS") with forwarding addresses; (i) receiving and processing undeliverable mail, without a forwarding address, from the USPS; (j) receiving and processing Claim Forms; (k) receiving and processing requests for exclusion and objections. The Settlement Administrator's records reflect that mailed Postcard Notices likely reached approximately 17,020 persons , which equates to a reach rate of the direct mail notice of approximately 87.87%. (Angeion Decl. ¶ 7) This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[3] over 70% of targeted class members is

---

[3] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

considered a high percentage and the "norm" of a notice campaign.[4] Subject to this Court's approval, Administration Costs of $55,275.00, which are set forth in in the attached Declaration from the Settlement Administrator, will be paid from the Settlement Fund. (Angeion Decl. ¶ 13)

**D.     OPT-OUTS AND OBJECTIONS**

Settlement Class Members were given the opportunity to opt out of or object to approval in accordance with the Settlement Agreement.  However, no Settlement Class Member requested exclusion from or objected to any aspect of the Settlement. (Angeion Decl. ¶¶ 12-13).

**E.     RELEASE**

The release is appropriately tailored to this case involving alleged violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendant from any and all claims against the Settling Defendant. The Release is limited to claims arising from debt collection calls from the Defendant and is further limited only to the individuals contained on the Class List. (Agreement. ¶2.13).

---

[4] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d Ed. 2010).

## IV.    ARGUMENT

## A.    THE SETTLEMENT APPROVAL PROCESS

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.44 (1985).

The amendments to Rule 23(e)(2) that went into effect in December 2018 provide additional guidance, requiring courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required, (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other.  Plaintiff will address these factors as applicable, many of which overlap.  There is no governmental participant, and no agreement required to be identified under Rule 23(e)(3).

In addition, the Third Circuit has a strong judicial policy that encourages class settlements, especially those that are the product of arm's length negotiations.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd sub nom. Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 317 (3d Cir. 1998); *see also In re Cmty.*

*Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of … 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quotation and citation omitted).

Moreover, in granting preliminary approval, the Court already determined that the proposed Settlement appeared fair, reasonable, and adequate and preliminarily found that the requirements of Rule 23 were satisfied for settlement purposes. Specifically, the Court found that the Settlement Class satisfied Rule 23's requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority and further found that the Settlement appeared to be fair, reasonable, and adequate under Rule 23(e). ECF No. 22 at 2–4. Nothing has occurred since preliminary approval that would warrant revisiting those conclusions. To the contrary, the successful implementation of the notice program, the absence of objections, and the absence of exclusion requests further confirm the fairness and adequacy of the Settlement.

**B.      THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED**

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate" and should be finally approved.  The elements of this test—known as the "*Girsh* factors"—are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the Defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157).

As summarized below, these factors, as well as the factors contained in Rule 23(e)(2), demonstrate that this settlement should be finally approved.

### 1.      Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and quotation marks omitted). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GMC*, 55 F.3d at 812. This factor undoubtedly weighs in favor of the Settlement here. In this litigation, the path from this point to a final judgment would be long and expensive. After discovery was completed, the Parties would have had to brief class certification, and the Court would have been forced to decide the strongly contested issue of whether a basis exists to certify a class for the purpose of establishing liability. If the Court determined that certification was warranted, then the Defendant presumably would have immediately exercised its right to seek interlocutory review of that certification order. If the certification order was upheld, additional discovery would have been taken (with attendant discovery-related motion practice). Thereafter, dispositive motions would have been filed by one or both of the Parties, and the Court would have been forced to adjudicate those motions, with additional appellate practice if such dispositive motions resulted in either entry of final judgment or a basis for interlocutory review. Depending on how the Third Circuit resolved any such appeals, the case might ultimately have gone to trial. Post-trial motions and additional appeals would have likely followed.

In fact, one of Class Counsel was involved in one of the only TCPA class actions to go through trial, and the amount of work done after class certification and through trial that would have resulted here is indicated in the work done in that case. *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333 (M.D.N.C. 2017) (more than 45 motions after a class certification

decision through the time of trial). That case remained on appeal several years after the initial trial was completed. In short, litigating this Action would have proved lengthy, complex, and expensive, thereby delaying (and potentially dissipating) any benefits that might have been obtainable by Settlement Class Members. The proposed Settlement Agreement permits the Court and the Parties to avoid this significant expenditure of time and resources. This factor strongly favors final approval of the proposed settlement.

### 2.    The Reaction of the Settlement Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential*, 148 F.3d at 318. Here, *no Settlement Class Member* has objected to any aspect of the settlement or otherwise requested to be excluded. *See In re AT&T Corp. Sec. Litig.,* 455 F.3d 160 (3d Cir. 2006) (district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were eight objections out of one million potential class members); *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 305 (3d Cir. 2005) (noting that a similarly low level of objection is a "rare phenomenon"). The positive response of the Settlement Class weighs in favor of approval.

### 3.    The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *See GMC,* 55 F.3d at 813.

This inquiry has two aspects: legal and factual. *Prudential*, 148 F.3d at 319. The first aspect is easily satisfied in this case, where the Parties engaged in extensive negotiations and related legal analysis with the help of an experienced and sophisticated mediator in Aaron Weiss of Carlton Fields who has helped resolve numerous TCPA class actions. As a result, Settlement Class Counsel has a more than adequate appreciation of the legal merits of the case. The same is

true from a factual perspective, which involves "an inquiry into the type and amount of discovery the parties have undertaken." *Id.*

Here, Settlement Class Counsel reviewed and analyzed document production and gathered information sufficient to have his expert conduct an analysis that identified putative class members and took the deposition of the Defendant. Settlement Class Counsel has a thorough appreciation of the facts—good and bad—which bear upon the merits of the claims in this litigation. In view of the foregoing, this factor strongly favors approval of the proposed settlement.

This Court recently recognized that final approval is particularly appropriate where a settlement follows meaningful factual development and permits the parties to assess the strengths and weaknesses of their respective positions, as it did in a TCPA action. *See Williams*, 2025 U.S. Dist. LEXIS 93078, at *2 (finding settlement was an "informed decision" where fact and expert discovery had been completed before settlement). As discussed above, Plaintiff conducted substantial discovery, retained an expert to analyze Defendant's call data, reviewed Defendant's records, and deposed Defendant's corporate representative before agreeing to settle this matter.

### 4. The Risks of Establishing Liability and Damages

As to the fourth *Girsh* factor, as well as factor (C)(i) of Rule 23(3)(2) ("the costs, risks, and delay of trial and appeal"): "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. "The risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995); *see also, e.g., West Virginia v. Chas. Pfizer & Co.*,

314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

As to the risks of establishing damages: "Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238-39 (internal citation and quotation marks omitted). While Defendant has agreed to settle, they were not without significant defenses. Class certification is far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights…. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill.

Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

While Plaintiff was confident he would ultimately prevail, this Action would continue to be heavily litigated by experienced class action counsel on behalf of Defendant.  As with any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiff was able to obtain by settlement much of the relief sought in the litigation, it is in the Settlement Class's best interest to accept the relief provided in the Settlement Agreement now rather than to spend hundreds of thousands of dollars in fees and years of time in an attempt to obtain a marginally better result through litigation.

### 5.      Risks of Maintaining Class Action Status Through Trial

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GMC*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial.  *Girsh*, 521 F.2d at 157.  While for the reasons stated above, Plaintiff firmly believe that this case is appropriate for class action treatment, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class.  For example, manageability is not a concern with settlement classes.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

What is certain is that any decision granting certification absent settlement would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial, and an appeal from any verdict or judgment in favor of the class would likewise follow.  If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for

each alleged statutory violation on their own, with the practical result of no recovery by anyone.

*See  Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic*

alternative to a class action is not 17 million individual suits, but zero individual suits, as only a

lunatic or a fanatic sues for $30.") (emphasis in original).  The proposed Settlement Agreement

provides a remedy now to all Settlement Class Members, rather than risking an uncertain result

after years of expensive litigation.

### 6.    Ability to Withstand a Greater Judgment

The sixth *Girsh* factor considers "whether the Defendant could withstand a judgment for

an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240.  This factor is

particularly relevant here.

In a TCPA case such as this, the potential damages could bankrupt Defendant.  Unlike a

large public company with extensive financial resources, the Defendant is a small company with

finite resources.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of
> their TCPA claims, but they receive a payout without having
> suffered anything beyond a few unwanted calls or texts, they receive
> it (reasonably) quickly, and they receive it without the time,
> expense, and uncertainty of litigation....  *[C]omplete victory for
> Plaintiff at $500 or $1,500 per class member could bankrupt [the
> defendant].... [The] recovery in the hand is better than a $500 or
> $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see*

*also Reinhart v. Lucent Tech.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[T]he risk of

nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against

which Plaintiff could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med.*

*Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

Discovery and deposition testimony further confirmed that Defendant lacked significant non-insurance assets available to satisfy a judgment materially larger than the Settlement obtained here. Importantly, the Settlement captures the entirety of Defendant's available insurance proceeds. As a result, continued litigation would have risked exhausting the very resources available to compensate the Settlement Class while simultaneously increasing defense costs. Under these circumstances, the Settlement represents an excellent recovery because it secures all available insurance proceeds for the benefit of the Settlement Class now, rather than risking years of additional litigation with no realistic prospect of obtaining a materially larger collectible recovery. *See* ECF No. 23 at 9–10.

7. **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. As Judge Becker explained in *GMC*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806. These factors overlap with Rule 23(e)(2)(C) (relief provided by the settlement is adequate, taking into account risks, distribution method, and attorneys' fees).

This fund compares favorably to other recoveries in TCPA class actions. *See, e.g.*, *Mannacio v. Sovereign Lending Grp. Inc.*, No. 3:22-cv-05498-TMC, 2023 WL 6389792 (W.D. Wash. Oct. 2, 2023) (preliminarily approving $500,000 TCPA class action settlement, with expected per-claimant recovery of $115); *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($5 million, which amounted to $77.10 per potentially

affected telephone number); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lalli v. First Team Real Estate—Orange Cty.*, No. 8:20-cv-27-JWH, ADS, 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) (approving $478,500 TCPA settlement amounting to $110 per class member); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (wrong-number TCPA settlement amounting to $1.269 million, or $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) (wrong-number TCPA settlement for $5.55 per person); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015) (approving wrong-number TCPA class action for $2.63 per person, settling claims of 3 million class members for $7.9 million).

In addition, participating Settlement Class Members will receive more than ***$740*** each, an amount higher than many other Court-approved TCPA settlements. *See, e.g.*, *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *3 (M.D. Fla. July 10, 2025) ("The per-claimant recovery of over $146 provides class members with monetary relief that exceeds other approved TCPA class action settlements.") (collecting cases); *Daugherty v. Credit Bureau Servs. Ass'n.*, No: 4:23-cv-01728, 2025 WL 1618354, at *3 (S.D. Tex. June 6, 2025) ("And notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements."); *James v. JPMorgan*

*Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at \*2 (M.D. Fla. Nov. 22, 2016) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)). *See also Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at \*10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at \*7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101).[5]

As this Court recently recognized in approving another TCPA class settlement, where class members receive substantial individual recoveries and continued litigation presents significant risks and delay, settlement is superior to further litigation. *Williams v. PISA Grp., Inc.,* 2025 U.S. Dist. LEXIS 93078, at \*2 (E.D. Pa. May 12, 2025). The same conclusion is warranted here.

And the proposed method of distributing relief and processing claims is effective and equitable.  Fed. R. Civ. P. 23(e)(2)(C).  To participate in the settlement, Settlement Class Members had to submit simple claim forms. Payments to Authorized Claimants will be sent after final approval, and all Authorized Claimants will receive an equal amount.  *See* Fed. R. Civ. P. 23(e)(2)(D) ("the proposal treats class members equitably relative to each other").

---

[5] *See also, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944-45 (D. Minn. 2016) ($33.20 per claimant, which the court characterized as "compar[ing] favorably with settlements in other TCPA class actions."); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at \*8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1047 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each).

The terms of the proposed attorneys' fees were disclosed in the Notices and are well in line with fees in other cases.

### 8.    The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the Plaintiff and Settlement Class Counsel have adequately represented the Settlement Class.  For the reasons stated in the Plaintiff's memorandum in support of preliminary approval, this requirement is satisfied.  Plaintiff's interests are aligned with those of the Settlement Class, and they have served the Settlement Class's interests in this litigation and in obtaining this settlement.  And Settlement Class Counsel is an experienced TCPA litigator.  (Class Counsel Decl., ECF No. 23-1.)

### 9.    The Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length.

Here, the Parties reached the settlement through formal mediation sessions with a highly respected, independent mediator, Aaron Weiss of Carlton Fields.  Prior to their sessions, the Parties prepared memoranda and exchanged information relevant to settlement negotiations.  The negotiations were substantive and included extensive discussions about the merits of Plaintiff' legal claims and Defendant's defenses.

The prolonged, hard-fought, and arm's length negotiations between experienced attorneys for both sides and the result for the Settlement Class are all testaments to the non-collusive nature of the settlement.  And "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Indeed, in approving a TCPA class action settlement, this Court recently emphasized that final approval was appropriate where "the settlement was negotiated at arm's length through the facilitation of a District-recommended mediator." *Williams v. PISA Grp., Inc.,* 2025 U.S. Dist. LEXIS 93078, at *1-2 (E.D. Pa. May 12, 2025). The same is true here. The Settlement was reached only after formal mediation before an experienced neutral mediator and subsequent arm's-length negotiations between experienced counsel, further supporting a finding that the Settlement is fair, reasonable, and adequate.

The "arm's-length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of approval.

## C.    SETTLEMENT CLASS MEMBERS WERE SENT PROPER NOTICE

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Indeed, when granting preliminary approval, the Court expressly found that the proposed notice program satisfied Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances. ECF No. 22 at 4. The notice program was thereafter implemented exactly as ordered by the Court. *See* Angeion Decl. As a result, Settlement Class Members received the precise form of notice previously approved by the Court and were afforded a full and fair opportunity to submit claims, request exclusion, or object to the Settlement.

The notice process that was successfully implemented in this case more than satisfied all requirements. As previously approved by the Court, the Parties implemented a Notice Plan including Postcard Notice and publication of a Long-Form Notice on the Settlement Website,

which the Postcard Notice also directs Settlement Class Members to. The language of the Postcard Notice, Long-Form Notice was negotiated and agreed to by the Parties and approved by the Court prior to being disseminated.  The proposed notices were written in simple terminology and included: (1) a description of the Settlement Class; (2) a description of the claims asserted in the Action; (3) a description of the Settlement Agreement; (4) the deadlines for filing a Claim Form and/or for exercising the right to opt out (including limitation on the opt-out right); (5) the names of counsel for the Settlement Class; (6) the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing; and (9) the deadline for filing objections to the settlement.

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* MANUAL FOR COMPLEX LITIGATION, *supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

The Notice that was previously preliminarily approved by this Court and disseminated to the Settlement Class satisfies these criteria.  The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement.  The Notice Plan constituted the best notice practicable under the circumstances, provided due and sufficient notice to the Settlement Class, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

### D.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court previously certified the Settlement Class for settlement purposes and appointed Plaintiff as Class Representative and Paronich Law, P.C. as Settlement Class Counsel. *See* ECF No. 22 at 2. Because nothing has changed in the interim warranting a departure from the Court's prior reasoning, Plaintiff respectfully submits that the Court should confirm certification of the Settlement Class for settlement purposes. The same facts supporting certification at preliminary approval remain unchanged, and the successful administration of notice, the absence of objections, and the absence of exclusion requests further demonstrate that certification remains appropriate.

The reaction of the Settlement Class further confirms the adequacy of the notice program and the fairness of the Settlement. In *Williams*, this Court found that the absence of objections or exclusion requests, together with a successful notice campaign, strongly supported final approval. *See Williams*, 2025 U.S. Dist. LEXIS 93078, at *2 (finding settlement favored where there were "no objections or exclusions by class members" and notice reached more than 87% of the class). Here, likewise, no Settlement Class Member objected to any aspect of the Settlement and no Settlement Class Member requested exclusion from the Settlement. (Angeion Decl. ¶¶ 12-13.) These facts strongly support final approval.

### V.    CONCLUSION

The proposed class action settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval.  It should, therefore, be approved in all respects. A proposed Final Approval Order is attached as <u>Exhibit 2</u>.

Respectfully submitted,

**/s/ Anthony I. Paronich**
Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Settlement Class*

Dated: June 6, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification to all counsel of record.

*s/ Anthony I. Paronich*